**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:06-cr-020 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| SHAHKWON DAVIS, | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is Shahkwon Davis's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. Davis seeks a new trial based on two alleged pieces of newly discovered evidence: (1) a voluntary statement authored by Davis's cousin stating that the cousin also lived in Davis's apartment where contraband was found; and (2) a newspaper report indicating that a detective who worked on Davis's case was recently fired for lacking credibility. The Court finds that these two revelations do not meet the standard for a new trial, namely because the voluntary statement contains information that would have been known to Davis at the time of trial and the recent firing of the detective is not sufficiently likely to result in Davis's acquittal. Therefore, the Court will deny Davis's Motion.

**I. BACKGROUND**

On January 17, 2006, a federal grand jury in this District returned an eight-count indictment against Davis. (Doc. 1.) Specifically, Davis was charged with three counts of distribution of cocaine, one count of distribution of cocaine and cocaine base, and one count of possession with the intent to distribute cocaine, all in violation of 21 U.S.C. §

841(a)(1); one count of possession with the intent to distribute five (5) grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); one count of possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and one count of criminal forfeiture of proceeds from drug distribution activities, pursuant to 21 U.S.C. § 853. (*Id.*)

Davis filed a Motion to Suppress Evidence Seized as the Result of Illegal Search on on July 14, 2006 (Doc. 37), and an evidentiary hearing was held on May 3, 2007. In pertinent part, Detective Thomas Davis, a narcotics detective with the Lackawanna County District Attorney's Office, had secured a warrant authorizing a search of Shahkwon Davis's apartment for "cocaine and other controlled substances as well as monies, records and paraphernalia used in the illegal use of controlled substances." *United States v. Davis*, 3 CR-06-020, 2007 WL 2065834 at *5 (M.D. Pa. July 16, 2007) (internal quotations omitted) *aff'd*, 383 F. App'x 172 (3d Cir. 2010). Although the warrant was never executed, when Davis was eventually arrested, the apartment was subjected to a protective sweep to determine whether anyone else was present inside and to prevent the destruction of evidence. *Id.* Nobody was found inside the apartment, and Detective Davis reapplied for a warrant–omitting any reference to the protective sweep and any information derived from the sweep–which was subsequently approved and executed. *Id.* at *5-6. While Davis argued that the protective sweep was unlawful and tainted the subsequent warrant, Judge Vanaskie held that the independent source doctrine applied, that "the evidence was seized pursuant to an independent source-a valid search warrant-which was not tainted by the initial illegality." *Id.* at *7. The Motion to Suppress was denied.

2

Davis was found guilty, *inter alia*, of possession with intent to distribute at least five grams of cocaine base (crack) under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), which carries a mandatory minimum of 120 months imprisonment. He was sentenced to120 months of imprisonment, five years of supervised release, a $700.00 special assessment, and forfeiture to the United States of $14,840.00. (Doc. 111.) Davis appealed his sentence and the Third Circuit affirmed the judgment and sentence. *United States v. Davis*, 383 F. App'x 172, 173 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 1471 (2011).

Through a Freedom of Information Act request, Davis uncovered a voluntary statement made by his cousin to the Lackawanna District Attorney's Office stating that his cousin and his cousin's girlfriend shared with Davis the apartment where the contraband was found. Davis also discovered a newspaper article from the Scranton Times-Tribune reporting that the District Attorney's Office had fired Detective Robert Mazzoni for a lack of credibility. Davis believes these two pieces of information each warrant him a new trial, and he filed this Motion seeking such a new trial on September 1, 2011.[1] On January 6, 2012, Davis moved to find the United States in default for not responding to his Motion. On March 8, 2012, the Court directed the United States to respond, which they did on March 15, 2012. The Motion is now fully briefed and ripe for the Court's review.

## II. DISCUSSION

**A.     Legal Standard**

Federal Rule of Criminal Procedure 33 authorizes a district court to grant a new trial

---

[1] Shahkwon Davis also has a pending Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 alleging some of the same issues. (Doc. 132.)

3

"if the interests of justice so require." Fed. R. Crim. P. 33. "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). Rule 33 motions are generally not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir.1987) (citations omitted). The determination of whether a new trial is warranted is left to the discretion of the district court. *United States v. Quiles*, 618 F.3d 383, 390 (3d Cir. 2010).

"Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33. Davis's guilty verdict was entered on August 30, 2007, rendering his Rule 33 Motion untimely as it was filed over 4 years after his verdict. Such untimeliness, however, may be overlooked "because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B); *United States v. Reyes*, CRIM.A. 06-654-1, 2008 WL 4950006 at *1 (E.D. Pa. Nov. 18, 2008) *aff'd*, 363 F. App'x 192 (3d Cir. 2010). "Excusable neglect is an equitable determination that should take account of relevant circumstances, including danger of prejudice, the length of the delay, the delay's impact on judicial proceedings, the reason for the delay, whether the movant had control over the delay, and whether the movant acted in good faith." *United States v. Kennedy*, 354

F. App'x 632, 636 (3d Cir. 2009) (citing *In re Cendant Corp. PRIDES Litig.*, 234 F.3d 166, 171 (3d Cir.2000)).  Yet, even a timely motion for a new trial on the basis of new evidence must meet five factors as set out in *United States v. Iannelli*:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir.1976)).

### B.     The Recently Discovered Voluntary Statement by Martin Ledbetter

Davis presents a voluntary statement, apparently secured through a Freedom of Information Act request, that Davis argues constitutes newly discovered evidence sufficient for a new trial.  This one-page statement states, in relevant part, that "I Melvin Ledbetter moved in with my cousin Shawn at 814 E Locust I stayed there with my girlfriend Kenya." (Def.'s Ex. B, Doc. 130.)  It goes on to affirm that Ledbetter did not "know nothing about no safe or anything about any guns before [he] moved [Davis] already had the apartment." (*Id.*)  Davis argues that this information would have materially altered the outcome of his criminal trial as it would have influenced the jury's deliberation on the issue of constructive possession of the contraband.  (Def.'s Br. at 6, Doc. 130.)

Even assuming that Davis's Rule 33 Motion was timely, it still fails to meet the primary *Iannelli* factor–that the evidence must be in fact, newly discovered.  Although Davis characterizes the statement as newly discovered, this label does not control, and "'newly available evidence' is not synonymous with 'newly discovered evidence.'"  *United States v.*

5

*Jasin*, 280 F.3d 355, 368 (3d Cir. 2002). In particular, "evidence known but unavailable at trial does not constitute 'newly discovered evidence' within the meaning of Rule 33. *Id.* at 362. In *Jasin*, a defendant was precluded from offering at trial testimony of a co-defendant who had invoked his Fifth Amendment privilege. It was undisputed that Jasin was aware at the time of trial of the substance of the prohibited testimony. Once the co-defendant pleaded guilty and served his sentence the testimony became available and Jasin motioned for a new trial under Rule 33. The Third Circuit rejected his motion, and concluded that since Jasin had known the substance of the testimony all along, that it was not newly discovered for the purposes of Rule 33. *Id.* at 368-69.

As in *Jasin*, the newly discovered evidence Davis relies on is more accurately construed as newly *available* and therefore does not warrant a new trial. This is because the voluntary statement reflects that Davis shared his apartment with Ledbetter and his girlfriend, and it is inconceivable that Davis did not know this fact at the time of trial. While Davis may not have had access to this particular document at trial,[2] the evidence contained therein was certainly accessible to him at that time. Therefore, this evidence is not newly discovered and a new trial on this issue is not warranted.

As newly discovered evidence must satisfy all of the *Iannelli* factors, it is not

---

[2]The prosecutor in Shahkwon Davis's case, Common Pleas Judge Margaret Bisignani Moyle, filed a declaration stating that when she was a prosecutor it was her normal practice to turn over all items to the defense in discovery, and further declared that: "I have no independent recollection of turning over [to Davis] the statement of Melvin Ledbetter, but I have no reason to believe that I deviated from my normal practices in this case." (Pl.'s Ex. A at ¶¶ 8-9, Doc. 135-1.) The Court also takes the opportunity to note that Detective Thomas Davis's apparent lack of *personal* knowledge as to this voluntary statement is not indicative of a concerted action to deprive Shahkwon Davis of that document. (*See* Trial Tr. at 47, Aug. 29, 2007.)

necessary to belabor the remaining factors. However, that Davis would know he shared his apartment with Ledbetter also reflects a lack of diligence in respect to this evidence–the second *Iannelli* factor. Diligence exists in the Rule 33 context where the unavailability of the evidence is not due to any fault on the part of the defendant, *United States v. Carmichael*, 269 F. Supp. 2d 588, 597 (D.N.J. 2003), and as Davis unequivocally knew he shared his apartment with his cousin, a failure to secure Ledbetter's testimony or an independent voluntary statement reflects a lack of diligence. As to the third factor, while this evidence does not seem to be cumulative, where Davis argues that this evidence could have been utilized to impeach the government, this is expressly foreclosed–"newly discovered evidence also cannot be considered merely impeaching." *United States v. Carmichael*, 269 F. Supp. 2d 588, 598 (D.N.J. 2003). While this proffered newly discovered evidence seems to be material and thus satisfies the fourth factor, as to the final *Iannelli* factor, the Court cannot conclude that this evidence is likely to produce an acquittal. To any extent it would bolster Davis's argument against constructive possession of contraband, the testimony within the voluntary statement also directly implicates Davis's possession. Ledbetter expressly states that he did not "know nothing about no safe or anything about any guns before [he] moved [Davis] already had the apartment" and that he had no knowledge of Davis's illegal activities. (Def.'s Ex. B, Doc. 130.) Thus, this newly discovered evidence fails to meet many of the *Ianelli* factors, all of which are necessary for the granting of a new trial.

Finally, Davis argues that withholding this voluntary statement was a violation of *Brady v. Maryland*, which held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Supreme Court later extended this holding to include evidence which may be used to impeach the testimony of a government witness, if that witness's credibility may have an effect on the jury's determination of guilty or innocence. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). There is a duty to disclose *Brady* evidence even in the absence of a request from the defendant. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Further, a prosecutor "has a duty to learn of any favorable evidence known to others acting on the government's behalf ... including the police." *Kyles v. Whitney*, 514 U.S. 419, 433–34 (1995).

Even assuming that Rule 33 is a proper mechanism to remedy a *Brady* violation,[3] the Court also finds that this argument fails for a similar reason as that above. In order to establish a *Brady* violation, (1) 'the evidence at issue must be favorable to the defendant;' (2) "it must be material;" and (3) "it must have been suppressed by the prosecution." *United*

---

[3] *Brady* violations are most appropriately brought under 28 U.S.C. § 2255 ("Federal custody; remedies on motion attacking sentence"). *United States v. Pelullo*, 105 F.3d 117, 122 (3d Cir. 1997) ("*Brady* violations fall within the scope of 28 U.S.C. § 2255" (citation omitted)); 16A Fed. Proc., L. Ed. 41:466 ("claim of a *Brady* violation is cognizable in a motion under 28 U.S.C.A. § 2255"). As such, "a *Brady* claim is not an appropriate ground for a Rule 33 motion because it constitutes a collateral attack on a conviction that must be brought in a motion under 28 U.S.C. § 2255." *U.S. v. Fuller*, 421 Fed.Appx. 642, 645 (citing *United States v. Evans*, 224 F.3d 670, 674 (7th Cir.2000) ("A defendant whose argument is not that newly discovered evidence supports a claim of innocence, but instead that he has new evidence of a constitutional violation or other ground of collateral attack, is making a motion under § 2255 (or § 2254) no matter what caption he puts on the document."); *United States v. Bales*, CRIM.A. 95-149, 1997 WL 825245 at *3 (E.D. Pa. Dec. 19, 1997) ("Rule 33 is not the proper vehicle for that challenge, but Defendant may bring it under 28 U.S.C.A. § 2255"); *but see U.S. v. Johnson*, 380 F.Supp.2d 660, 670 n.4 (E.D. Pa. 2005) (Finding that, aside from the different limitations periods, that "[t]here does not appear to be any difference in the substantive standard for adjudicating *Brady* claims under Rule 33 or under 28 U.S.C. § 2255.").

8

States v. Friedman*, 658 F.3d 342, 357 (3d Cir. 2011) (quoting *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir.2008)). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). However, "*Brady* does not compel the government to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir.2005) (internal quotations omitted) (quoting *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir.1984)). As noted above, Davis had knowledge of his former roommates, and with reasonable diligence, he could have obtained these statements on his own for trial. Thus, Davis motion as construed as one under *Brady* also fails.

Therefore, as this evidence is not actually newly discovered, could have been previously uncovered with due diligence, and is not likely to exculpate, Davis's Motion for a new trial will be denied with respect to Ledbetter's voluntary statement.

### C.     Detective Mazzoni's Subsequent Firing for Lack of Credibility

Davis argues that a new trial is necessary where one of the government's surveillance-gathering detectives was later found to lack credibility. (Def.'s Br. at 2, Doc. 130.) In particular, Davis references a June 5, 2010[4] article from the Scranton Times-Tribune noting that undercover detective Robert Mazzoni had been fired due to credibility concerns. (Def.'s Ex. A, Doc, 130.) Davis argues that Mazzoni was an integral part of the

---

[4] Defendant's Exhibit omits part of the date of the newspaper article in his exhibit, though he notes in his brief that it was published in 2011. (Def.'s Br. at 2, Doc. 130.) The Court, however, takes judicial notice of the full and accurate date of publication (June 5, 2010) from the Scranton Times-Tribune as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

investigation in his case, was suppressed from testifying, and that the prosecution had knowledge of his lack of credibility at the time of his trial. (Def.'s Br. at 2, 7, Doc. 130.)

As noted, a timely motion for a new trial on the basis of new evidence must meet the factors set out in *Iannelli*, specifically that the newly discovered evidence "must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *Cimera*, 459 F.3d at 458 (quoting *Iannelli*, 528 F.2d at 1292). "Although the decision to grant or deny a motion for a new trial lies within the discretion of the district court, the movant has a 'heavy burden' of proving each of these requirements." *Id.* (citing *United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000)). Here, the Court finds that Davis has failed to meet this tall burden and concludes that this new evidence would be insufficient to produce an acquittal.

First, Davis does not cite any new evidence that–even if directly applicable to his particular case–would necessarily compel an acquittal. The article Davis cites, published roughly three years after the completion of his trial (and over four years from the return of his indictment) references Mazzoni's "overzealous and reckless" conduct including issues with credibility, insubordination, and dereliction of duty. (Def.'s Ex. A, Doc, 130.) In particular, the article alludes to a recent, unspecified incident which culminated in Mazzoni's firing. From these generalized, somewhat cryptic references, it is not possible to tell what sort of inappropriate conduct was occurring, how far back it went, or whether it alone would have the potential to produce acquittal in a case Mazzoni investigated. Yet, more importantly, Mazzoni was not sufficiently involved in building the specific case against Davis.[5] A review of the affidavit of probable cause and Judge Vanaskie's suppression

---

[5]Specifically, Davis argues that Mazzoni was instrumental in "forming the illegal theory to perform a protective sweep." (Def.'s Br. at 8, Doc. 130.) As noted, Judge

hearing reflects no involvement in this investigation by Detective Mazzoni. From this, the Court concludes that Mazzoni's failure to testify at trial or during the suppression hearing was not due to a "lack of credibility" as Davis argues, but a lack of centrality. (Def.'s Br. at 8, Doc. 130.)

Instead, the affiant, Detective Thomas Davis, a Detective at the Lackawanna County District Attorney's Office and a member of the lackawanna County Drug Task Force, related in his affidavit four drug purchases made through a reliable confidential informant ("CI"). Specifically, on each occasion, the CI was searched for contraband and money, given United States currency with the serial numbers recorded, and followed to the Convenient Mart by Detective Davis. Detective Davis then would witness the transaction, and afterwards would retrieve the drugs from the CI and search the CI's person and vehicle, having never lost sight of the CI in the process. Other detectives–Detective Nick DeSando and on one occasion Detective Chris Kolcharno–conducted surveillance of Davis's residence where they would witness Shahkwon Davis leaving the premises after contact with the CI and would then follow him to the Convenient Mart to meet with the CI. From the documents before the Court, Mazzoni's only involvement in this case was limited to assisting as Detective DeSando's partner, a fact gleaned through the singular reference to him at trial. (Trial Tr. at 52:19-20, Aug. 29, 2007.) Finally, after conducting a suppression hearing in this matter in which the Detective Davis testified, Judge Vanaskie found him to

---

Vanaskie previously determined that, even if the protective sweep was illegal, suppression was unnecessary as the evidence in question "was seized pursuant to an independent source-a valid search warrant-which was not tainted by the initial illegality." *United States v. Davis*, 3 CR-06-020, 2007 WL 2065834 at *5 (M.D. Pa. July 16, 2007) (internal quotations omitted) *aff'd*, 383 F. App'x 172 (3d Cir. 2010).

11

be credible and concluded that the facts presented within the affidavit created a "'fair probability' that evidence of Defendant's drug dealing activities would be found in his apartment." *Davis*, 2007 WL 2065834 at *12. Therefore, even assuming the worst about Mazzoni's behavior, there is nothing indicating that he improperly impacted the disposition of this matter. The Court concludes that a new trial including information on Mazzoni's firing would probably not produce an acquittal and will deny Davis's Motion on this issue. Therefore, Davis's Motion for New Trial based on Detective Mazzoni's firing will be denied.

### III. CONCLUSION

The Court finds that these newly discovered facts are insufficient to warrant a new trial. As the voluntary statement confirms that Shahkwon Davis's cousin lived with Davis in the apartment, the most that can be said about this particular document is that it is newly available, and since the facts contained therein are not truly newly discovered, it fails as the basis for a new trial. Moreover, any uncertainty cast on the trial by Detective Mazzoni's firing is not likely to result in an acquittal and is similarly insufficient to warrant a new trial. Therefore, Davis's Motion for a New Trial (Doc. 130) will be denied. Further, Davis's Motion to find the United States in default (Doc. 131) will also be denied as the United States had not defaulted, but was not yet directed by the Court to respond. An appropriate order follows.

| | |
|---|---|
| April 17, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |